UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

SANDRA MROSS                                                                                    PLAINTIFF

V.                            NO. 3:17CV00290-JTR

NANCY A. BERRYHILL,
Deputy Commissioner for Operations,
performing the duties and functions not reserved
to the Commissioner of Social Security                                              DEFENDANT

## ORDER

### I. Introduction:

Plaintiff, Sandra Mross ("Mross"), applied for disability benefits on May 27, 2015, alleging an onset date of May 8, 2015. (Tr. at 32). After conducting a hearing, the Administrative Law Judge (ˍALJˍ) denied her application on October 17, 2016.[1] (Tr. at 40). The Appeals Council denied her request for review. (Tr. at 1). Thus, the ALJ=s decision now stands as the final decision of the Commissioner.

For the reasons stated below, the Court[2] reverses the ALJ's decision and remands for further review.

### II. The Commissioner=s Decision:

The ALJ found that Mross had not engaged in substantial gainful activity since

---

[1] The relevant time-period for determination of benefits was May 8, 2015 through October 17, 2016. (Tr. at 32-40).
[2] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

May 8, 2015, the date she alleged she became disabled. (Tr. at 34). At Step Two, the ALJ found that Mross has the following severe impairments: disorder of the back, fibromyalgia (recent onset), obesity (morbid), and cirrhosis of the liver. *Id.*

After finding that Mross's impairments did not meet or equal a listed impairment (Tr. at 35), the ALJ determined that Mross had the residual functional capacity ("RFC") to perform the full range of light work,[3] except that: (1) she could not perform frequent stooping or crouching; (2) she could perform complex, detailed, or skilled tasks, involving multiple variables; and (3) she could exercise considerable judgment and would require little or no supervision. *Id.*

The ALJ found that, based on Mross's RFC, she was able to perform past relevant work as a bank teller, accounts receivable clerk, and credit clerk.[4] (Tr. at 40). Thus, the ALJ held that Mross was not disabled. *Id.*

### III. <u>Discussion</u>:

A. Standard of Review

The Court=s function on review is to determine whether the Commissioner=s decision is supported by substantial evidence on the record as a whole and whether

---

[3] The controlling regulation defines light work as requiring the ability to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds and a good deal of walking or standing; light work also involves some pushing and pulling of arm or leg controls when sitting most of the time. 20 C.F.R. § 404.1567.
[4] The ALJ *did not* make an alternative finding at Step Five that other work existed in the national economy that Mross could perform, nor was he required to.

2

it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. ' 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

B. Mross's Arguments on Appeal

Mross contends that substantial evidence does not support the ALJ's decision to deny benefits. Specifically, she argues that: (1) the ALJ erred by finding that Mross's migraines were not a severe impairment; (2) the RFC exceeded her functional abilities because the ALJ did not fully develop the record pertaining to her impairments; and (3) the credibility analysis was inadequate. The Court agrees that the ALJ failed to fully develop the record.

An ALJ has a duty to develop the record fully, even when the claimant is represented by counsel, and must order a consultative examination if it is necessary to make an informed decision. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

3

An ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled. *Combs v. Astrue*, 243 F. App'x 200, 205 (8th Cir. 2007); *see Cline v. Colvin*, 771 F.3d 1098, 1106 (8th Cir. 2014)(the ALJ is obligated to seek clarifying evidence if concerned that physician's treatment notes were inadequate, unclear, or incomplete); 20 C.F.R. §§ 404.1591a(b) and 416.919a(b).

In this case, state-agency reviewing physicians found, in opinions issued on September 9, 2015 and December 2, 2015, that Mross was capable of light work. (Tr. at 77, 94). Three of Mross's treating physicians issued opinions well after those dates, which is one problem with the ALJ's reliance on the reviewing physicians' opinions.

A treating physician completed a medical source statement for migraines on October 29, 2015. (Tr. at 666). She said that Mross was having migraines three times a week, with duration of 12-24 hours each. *Id*. Symptoms included photophobia, phonophobia, and throbbing or pulsating pain. *Id*. The doctor noted that Mross was taking Topamax for migraines, and that her response to medication was poor. *Id*. However, surprisingly, the doctor concluded that migraines did not interfere with Mross's ability to work. *Id*. This is the first of many inconsistent opinions, which called for further development of the record by the ALJ.

On July 24, 2016, Dr. R. Alex Dellinger, D.P.M, MRoss's foot and ankle doctor, submitted a narrative letter about her condition. (Tr. at 674). He said he had been treating Mross for several years for bilateral lower extremity pain, and that she had "failed tarsal tunnel release surgery, as well as other treatments." *Id*. Over the course of his treatment, Dr. Dellinger prescribed prednisone, epidural injections, a walking boot, a compression sleeve, and pain cream. (Tr. at 362-375). A consistent diagnosis of chronic pain, coupled with a long history of pain management and drug therapy, supports a claimant's allegations of disabling pain. *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998).

Dr. Dellinger noted a long history of lumbar spine disease and back surgery (which had not relieved Mross's back pain). (Tr. at 674). He said that her back pain was exacerbated by long periods of standing, and that she should not stand for long periods of time (which contravenes the RFC for light work in this case). *Id.*

Dr. Stephen Cathey, M.D., a neurosurgeon, treated Mross starting in September 2014. (Tr. at 312). At that time, he found normal straight-leg raise and no sign of lumbar radiculopathy. *Id*. However, he said Mross continued to have back pain, in spite of physical therapy and narcotic medication. *Id*. Dr. Cathey opined that since Mross's problems were only getting worse, her decision to apply for disability benefits was reasonable. *Id*.

5

After continuing to treat Mross for two years, Dr. Cathey submitted a medical source statement on July 25, 2016. (Tr. at 675). He noted "chronic mechanical lower back pain," which persisted in spite of multiple steroid injections. *Id*. An MRI showed a well-healed back surgery, with implant cages in good position. *Id*. Dr. Cathey concluded that her problem would not get any better, but that she was not a candidate for neurosurgical intervention. *Id*. Then, confoundingly, Dr. Cathey said that she would have trouble getting disability benefits because she did not have any real restrictions on activities of daily living from a neurological standpoint.[5] *Id*. The ALJ cherry-picked that final conclusion from Dr. Cathey's opinion, rather than discuss Dr. Cathey's findings of disabling pain, which treatment did not alleviate for Mross. (Tr. at 39-40).

On August 9, 2016, Lashelle Gordon, a physical therapist, performed a functional capacity evaluation of Mross. (Tr. at 717-726). Using clinical objective tests, she found that Mross's maximum tolerance for sitting and standing was ten minutes. *Id*. Mross had no measured tolerance for walking. *Id*. Ms. Gordon found decreased range of motion in Mross's back, and she noted that Mross rated her pain a 10 out of 10. *Id*. Mross's Oswetry low back disability score was 80%, which Ms.

---

[5] At the hearing, Mross testified that she was quite limited in her activities of daily living. (Tr. at 58-64).

6

Gordon labeled as crippling. *Id*. However, Ms. Gordon reported invalidity of some test results because of inconsistency, suggesting that Mross did not give full effort on the testing. *Id*.

On August 22, 2016, Mary Anderson, M.D., reviewed Ms. Gordon's report and found Mross to be "fully disabled." (Tr. at 728).

An ALJ must discuss the weight he assigned to the relevant medical opinions. The ALJ said he gave *some* weight to the state-agency medical opinions. (Tr. at 39-40). He did not say what weight he gave to any of the other medical opinions, aside from that of Dr. Anderson (he gave her opinion *little* weight). *Id*. So his discussion was incomplete.

Certainly, the opinions from medical providers suggest that Mross may be incapable of performing light work. The state-agency reviewing physicians did not have those opinions before them to review. For that reason, the state-agency opinions did not capture all of Mross's medical history, and should not have been relied upon to the exclusion of other better supported opinions. Finally, there is great inconsistency in all of the medical opinions, even within the individual doctors' statements. The medical evidence is unclear, at a minimum, but it could also be interpreted as lending support to Mross's claim for benefits. Because there is conflict between the opinions, the ALJ should have ordered a consultative RFC evaluation,

which he did not. Without such consultation, the record is incomplete, and thus, insufficient to support the ALJ's determination. He erred by not fully developing the record.

IV. **Conclusion**:

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477). The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing. The Court finds that the ALJ's decision is not supported by substantial evidence, because the ALJ did not fully and fairly develop the record.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is REVERSED and the case is REMANDED for further review.

DATED this 7th day of November, 2018.

_____
UNITED STATES MAGISTRATE JUDGE